UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AIDA DOMENECH,

        Plaintiff,

- against -

NEW YORK CITY EMPLOYEES'
RETIREMENT SYSTEM,

        Defendant,

----------------------------------------------------------x

**MEMORANDUM AND ORDER**
15-CV-2521 (ILG) (PK)

GLASSER, Senior United States District Judge:

Aida Domenech ("plaintiff") brings this suit against her employer, the New York City Employees' Retirement System ("defendant"), alleging retaliation and religious discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Before the Court is the defendant's motion to dismiss the complaint. For the reasons given below, the defendant's motion is GRANTED in part and DENIED in part.

## 1   BACKGROUND[*]

The events leading to the commencement of this action are alleged in a ninety-one-paragraph complaint (Dkt. 1) that reads like a transcription of the plaintiff's free-association of the offending events, rather than the "short and plain statement" envisioned by Rule 8 of the Federal Rules of Civil Procedure. What follows is an attempted distillation of those allegations that would permit an understanding of the essence of this litigation and the legal issues it presents.

---

[*] Factual allegations taken from the plaintiff's complaint are accepted as true for the purpose of deciding this motion.

1

The plaintiff has been employed by the defendant since 1988. *See* Compl., ¶ 13. She is alleged to have been an exemplary employee whose ability was recognized by promotions and reflected in yearly salary increases from $21,530 when she began to $74,233 in 2006. *See id.*, ¶¶ 14–16. In that year, the plaintiff allegedly heard her then-supervisor proclaim, "Whites have always stopped me in traffic because I am black and they can't accept a black person driving an Infiniti. That is why I always look out for my people of color. Now is my chance to promote the blacks." *Id.*, ¶ 18. That statement led the plaintiff to complain in February and May 2007 to the NYC Department of Investigation (DOI) and the Agency Operations Division (AOD) that only black Caribbean employees were promoted. *See id.*, ¶¶ 18–19. She alleges that, as a result of her complaints about racial discrimination, she suffered retaliation in the form of negative evaluations and the denial of an annual bonus and salary increase. *See id.*, ¶¶ 21–22.

The plaintiff alleges that after she continued to suffer racial discrimination and retaliation, on May 7, 2008, she filed a charge with the New York State Division of Human Rights (NYSDHR) accusing two named supervisors of discriminatory and retaliatory practices. *See id.*, ¶¶ 24–25. The filing of that charge, she claims, led to her termination, which she appealed to the Office of Administrative Trials and Hearings. *See id.*, ¶ 26. That office determined that her termination was unwarranted and recommended instead a suspension without pay for 15 days. *See id.*, ¶¶ 26–28. That determination was adopted by the parties in a stipulation settling the aforementioned May 7, 2008 charge. *See id.*, ¶ 29.

When the term of her suspension ended, the plaintiff returned to work with the hope that discrimination and retaliation were things of the past. *See id.*, ¶ 30. Her hopes were dashed by a litany of events alleged to be discriminatory and retaliatory, recited in mind-numbing detail in the complaint. In brief, the plaintiff alleges that the defendant denied her requests for overtime,

vacation, and time-off for religious observance, and involuntarily transferred her to a different unit, in retaliation for her prior complaints. *See id.*, ¶¶ 31–79.

The plaintiff presented these allegations to the NYSDHR. First, on October 5, 2011, the plaintiff filed a charge with the NYSDHR and the Equal Employment Opportunity Commission (EEOC), alleging retaliation and religious discrimination (the "2011 Charge"). Second, on August 29, 2012, the plaintiff amended her then-pending 2011 Charge, adding new allegations of retaliation and a claim of disability discrimination. Finding probable cause, the NYSDHR permitted the 2011 Charge to proceed.

Third, while the 2011 Charge was still pending, in March 2013, the defendant again denied plaintiff's overtime request. *Id.*, ¶ 57. She alerted the NYSDHR to that fact in June 2013—but rather than amend the 2011 Charge, she filed a new charge ("2013 Charge"). The 2013 Charge described the denial of overtime in March as a continuation of the retaliation alleged in the 2011 Charge and asked the NYSDHR to assign it to the caseworker handling that charge.

The tangled sequence in which the NYSDHR administered these two filings presents issues to be addressed. To begin with, the NYSDHR considered the 2011 and the 2013 Charges separately. It decided the 2013 Charge *first*, finding that pre-June-2012 claims were time-barred, and that the charge in other respects was without probable cause. The EEOC concurred and in 2014 mailed to the plaintiff a right-to-sue-letter regarding the 2013 Charge.[1] The NYSDHR then

---

[1] Although the complaint does not mention the 2013 Charge and 2014 right-to-sue letter—those documents were presented with the defendant's motion to dismiss, *see* Balog Decl., Ex. C & Ex. E, Dkts. 10-5, 10-7—the Court may consider them in deciding whether Plaintiff's claims are timely. The plaintiff acknowledges the documents and receipt of the 2014 Letter. *See* Pl.'s Mem. of Law, Dkt. 14, at 2–3. The facts recounted here that are not alleged in the complaint are undisputed and drawn from materials of which both parties had notice. Accordingly, the documents may properly be considered. *See Lindner v. Int'l Bus. Machines Corp.*, 2008 WL 2461934, at *1 n.1 (S.D.N.Y. June 18, 2008) (on a motion to

3

dismissed the 2011 Charge, and the plaintiff received a second right-to-sue-letter from the EEOC on February 15, 2015. *See* Compl., ¶ 7 & Ex. A.

This action was then duly commenced on April 17, 2015, asserting religious-discrimination and retaliation claims pursuant to Title VII and a disability-discrimination claim pursuant to the ADA—all complained of in the 2011 Charge. On June 30, 2015, the defendant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## 2   DISCUSSION

### 2.1   Procedural Prerequisites

The plaintiff satisfied the statutory prerequisites (*see* 42 U.S.C. §§ 2000e-5(e)–(f), 12117(a)) with regard to the 2011 Charge: she exhausted administrative remedies by filing a charge with the NYSDHR within 300 days of the alleged offending conduct, obtaining a right-to-sue letter, and commencing this action within 90 days of receiving that letter. Therefore, Title VII claims accruing between December 9, 2010 and August 29, 2012, and ADA claims accruing between November 2, 2011 and August 29, 2012, are timely for purposes of this motion.

The complaint alleges overtime-denial-based retaliation but fails to specify the dates of those denials—it states that "beginning in or about January 2010," the plaintiff was "never" allowed to work overtime (Compl., ¶ 33)—precluding a determination of the timeliness of those claims. Each denial is a discrete act, actionable only if it occurred after December 9, 2010. Thus, overtime-denial retaliation claims are dismissed with leave to replead the date of each denial.

The defendant's argument that claims made in the *2011 Charge* are barred because Plaintiff did not file suit within 90 days of receiving the right-to-sue letter addressing the *2013 Charge* is meritless. The 2013 Charge supplemented the claims made in the earlier-filed 2011

---

dismiss, "the Court may take judicial notice of EEOC filings relating to plaintiff's claims") (collecting cases).

4

Charge—it did not duplicate them. The NYSDHR's inexplicable decision to consider the charges separately and decide the 2013 Charge first does not bar the Court's consideration of claims asserted in the 2011 Charge. *See Babcock v. Frank*, 729 F. Supp. 279, 285 (S.D.N.Y. 1990); *cf. Cornwell v. Robinson*, 23 F.3d 694, 706 (2d Cir. 1994).

**2.2  Failure to State a Claim**

As elaborated below, the defendant's contention that the complaint fails to state a claim under Title VII or the ADA is valid insofar as the complaint fails to state a claim for religious- and disability-discrimination, and the defendant's motion is granted as to those claims. The plaintiff's retaliation claim, however, is plausible, resting on allegations that, if proven, would permit a reasonable inference that the defendant is blameworthy. Therefore, the defendant's motion is denied with regard to the retaliation claim.

2.2.1  *Title VII Retaliation*

Title VII "forbids an employer from 'discriminating against' an employee because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge . . . in' a Title VII proceeding." *Brown v. Cty. of Erie*, 2013 WL 885993, at *3 (W.D.N.Y. Mar. 8, 2013) (quoting 42 U.S.C. § 2000e-3(a)). "To establish a prima facie case of retaliation, an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). However, to survive a motion to dismiss, an employee "need not specifically plead every element;" she must allege just enough factual matter to "render [the] retaliation claims plausible." *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 187 (E.D.N.Y. 2012) (citing *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 71–72 (2d Cir. 2006)).

There is no dispute that the filing of a NYSDHR charge alleging a Title VII violation is a protected activity, that the defendant was aware that the plaintiff filed such a charge, and that the plaintiff suffered materially adverse actions. The defendant challenges the causal connection between the plaintiff's filing and the adverse actions.

To establish a causal link, the plaintiff must prove "that retaliation was a 'but-for' cause of the adverse action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526 (2013)). Causation may be proven with direct evidence of retaliatory animus, or with circumstantial evidence, including, for example, close temporal proximity between the protected activity and adverse action (*Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)), proof that the complaining employee was "treated differently than other employees who did not engage in a protected activity" (*Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 433 (E.D.N.Y. 2012); *Grant v. United Fed'n of Teachers*, 2014 WL 978444, at *13 (E.D.N.Y. Mar. 12, 2014)), or proof of "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action" (*Collazo v. Cty. of Suffolk*, 2016 WL 660856, at *17 (E.D.N.Y. Feb. 17, 2016) (quoting *Zann*, 737 F.3d at 846); *see also Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).

There is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between [a protected activity] and an allegedly retaliatory action'"—the analysis is "heavily reliant upon the specific factual circumstances of each case." *Karam v. Cty. of Rensselaer, New York*, 2016 WL 51252, at *10 (N.D.N.Y. Jan. 4, 2016) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). As the defendant points out, in many cases, the passage of 20 months between a protected activity and adverse action would preclude an inference of retaliation. *See*

*Morisseau v. DLA Piper*, 532 F.Supp.2d 595, 617 & n.142 (S.D.N.Y. 2008) ("While the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports the view that ten or twelve months is too long.") (quotation omitted) (collecting cases). *But see, e.g.*, *Batyreva v. New York City Dep't of Educ.*, 2008 WL 4344583, at *14 (S.D.N.Y. Sept. 18, 2008) ("although more than two years passed between Plaintiff's complaint to the SDHR and the alleged discrimination during fall 2006, Plaintiff has plausibly alleged that the events are causally connected").

However, in this case, a review of the timeline demonstrates that temporal proximity may support an inference of retaliation. Just nine months after Plaintiff first complained about discrimination, in February 2009, Defendant tried to terminate her. Although the attempted termination is not actionable (the plaintiff released that claim as part of a settlement), because it occurred nine-months after the protected activity and was later reversed as unwarranted by an independent decisionmaker, it is evidence of retaliatory intent. *Cf. Grant v. United Fed'n of Teachers*, 2014 WL 978444, at *13 (E.D.N.Y. Mar. 12, 2014) (together, a nine-month gap and evidence of differential treatment may raise a plausible inference of causation); *see generally Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (time-barred acts may be offered as evidence of retaliatory motive); *id.* at 177 ("[R]elevant background evidence, such as . . . earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act.").

The subsequent ten months, during which the plaintiff was suspended (the period between her termination and its reversal), do not preclude an inference of retaliation, as the defendant had no opportunity to retaliate during that period. *See, e.g.*, *Cronin v. St. Lawrence*,

7

2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009) ("the [11 month] time lag at issue here is at least in the range of acceptable time periods, particularly if Defendant had no earlier opportunity to retaliate against Plaintiff for engaging in protected activity") (collecting cases). Then immediately after the plaintiff returned from leave, in January 2010, the defendant began denying her requests for overtime. As discussed above, the plaintiff must specify that her requests were denied during the limitations period, which began several months later, in December 2010. However, it may be plausibly inferred that when she returned the accusatory filing (the protected activity) still rankled her supervisors and reignited their retaliatory motivation. Moreover, additional allegations, if proven, would corroborate retaliatory intent: the defendant denied plaintiff's overtime, vacation, and unit-transfer requests while granting other employees' requests (*see* Compl., ¶¶ 31–32, 49–53); and the defendant gave pretextual and inconsistent reasons for those decisions (*see id.*, ¶¶ 31–33, 36–37, 45–46).

The motion to dismiss the retaliation claim, therefore, is denied.

### 2.2.2  *Title VII Religious Discrimination*

The plaintiff asserts a religious discrimination claim under Title VII, based entirely on the allegation that her supervisor denied her request to take a day off for religious observance on December 30, 2011. This allegation does not plausibly allege discrimination, which requires proof that "(1) [Plaintiff] has a bona fide religious belief that conflicts with an employment requirement; (2) [Plaintiff] informed the employer of this belief; (3) [Plaintiff] was disciplined [or threatened with discipline] for failure to comply with the conflicting employment requirement." *Siddiqi v. New York City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 369 (S.D.N.Y. 2008). The plaintiff does not allege specific facts to support any of these elements. Accordingly, her religious discrimination claim is dismissed.

2.2.3 *ADA Failure-to-Accommodate*

The plaintiff alleges that the transfer from one unit to another caused her to develop severe anxiety. She asserts that by denying her requests to return to her previous unit, the defendant failed to accommodate her anxiety and thereby violated the ADA. But "[j]ob-related stress—particularly that caused by working with a particular supervisor—is not considered a disability under the ADA." *Xinwa Chang v. MetroPlus Health Plan*, 2014 WL 842635, at *6 (S.D.N.Y. Mar. 4, 2014) *aff'd*, 590 F. App'x 74 (2d Cir. 2015) (quoting *Thompson v. Fed–Reserve Bank of N.Y.*, 2004 WL 330243, at *8 (S.D.N.Y. Feb. 23, 2004)) (brackets in original). This is particularly true where, as here, Plaintiff admits that her job performances was still "good" despite the anxiety. *See Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir.2000) ("Standing alone, a personality conflict between an employee and a supervisor—even one that trigger's the employee's depression—is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor."). Therefore, the plaintiff fails to state a claim under the ADA.

**CONCLUSION**

The defendant's motion to dismiss the complaint is GRANTED in part and DENIED in part. The plaintiff's religious-discrimination claims and ADA claims are dismissed with prejudice. The plaintiff's Title VII retaliation claim survives, except to the extent it is based on the retaliatory denial of overtime. The Court cannot determine from the face of the complaint whether overtime-based retaliation claims are timely. Those claims are dismissed with leave to replead the date of each overtime denial within 15 days of the date of this order.

SO ORDERED.

Dated:	Brooklyn, New York
	May 9, 2016

                                        /s/
                                 ───────────────────────
                                 I. Leo Glasser
                                 Senior United States District Judge